UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

In re:                                                          Chapter 11

9 Crosby LLC                                                    Case No. 25-12559-LGB

                                              Debtor.

-----------------------------------------------------------------x

## DEBTOR'S CHAPTER 11 LIQUIDATING PLAN OF REORGANIZATION

9 Crosby LLC (the "Debtor") hereby proposes the following Chapter 11 liquidating plan of reorganization (the "Plan") pursuant to the provisions of Title 11 of the United States Code (the "Bankruptcy Code").

## FRAMEWORK OF THE PLAN

The Debtor is the owner and operator of the NoMo SoHo Hotel, located at 150 Lafayette Street a/k/a 9 Crosby Street, New York, NY (the "Hotel"). The Debtor sought Chapter 11 relief to pursue a bankruptcy auction sale of the Hotel based upon a stalking horse contract (the "Stalking Horse Contract") with DH 9 Crosby LLC (the "Stalking Horse Buyer"), at a purchase price of $125 million (subject to receiving higher and better bids pursuant to the bidding and sale procedures approved by the Bankruptcy Court).

The Debtor recently obtained an Order, dated December 1, 2025 [ECF No. 18] (the "Sale Procedures Order"), approving the Stalking Horse Contract, replete with bid protections in the form of a 3% break-up fee and an expense reimbursement of up to $300,000. In the event the Debtor receives more than one Qualified Bid, an auction sale of the Hotel is scheduled for December 22, 2025 to be conducted by the Debtor's counsel in conjunction with Eastdil Secured, L.L.C. Regardless of whether the Hotel is sold to the Stalking Horse Buyer or another successful purchaser that may emerge at the auction, the Plan provides the framework to consummate the sale transaction and distribute the sale proceeds to pay allowed claims. The Debtor intends to close the

sale transaction after confirmation of the Plan so as to qualify for city and state transfer tax exemptions under 11 U.S.C. § 1146(a).

<div align="center">

## ARTICLE I

## DEFINITIONS

</div>

All capitalized terms used herein shall have the meanings set forth below.

1.1     "**Administrative Expense Claim**" means a Claim for the post-petition costs and expenses incurred in connection with the operation of the Hotel after commencement of the Chapter 11 case, entitled to priority under §§ 503(b) and 507(b) of the Bankruptcy Code, and not otherwise paid in the ordinary course of business pursuant to the Cash Collateral Order, plus professional fees awarded to the professionals in the Chapter 11 case.

1.2     "**Allowed**" means, with reference to any Claim, proof of which was timely and properly filed or, if no proof of Claim was filed, that has scheduled by the Debtor as being liquidated and undisputed, and as to which: (a) no objection to allowance has been interposed within the applicable period fixed by the Plan; or (b) an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order.

1.3     "**Available Cash**" means all of the Hotel's cash funds on deposit as of the Effective Date in the Debtor's DACA and DIP account, established pursuant to the Cash Collateral Order, together with the net proceeds generated from the sale of the Hotel.

1.4     "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York.

1.5     "**Bar Date**" means the last date set by the Bankruptcy Court to file a Claim against the Debtor.

1.6     "**Business Day**" means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

1.7     "**Cash Collateral Order**" means the interim order or final order authorizing the use of "cash collateral" entered (or to be entered) by the Bankruptcy Court in this Chapter 11 case.

1.8     "**Cause of Action**" means, without limitation, any and all adversary proceedings, Claims, causes of action, rights, damages and demands whatsoever, arising under state or federal law (including Avoidance Claims as defined in the Cash Collateral Order), whether known or unknown, reduced to judgment, liquidated or

<div align="center">2</div>

unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertible directly or derivatively by the Debtor, existing or hereafter arising, in law, equity, or otherwise.

1.9 "**Claim**" means a claim against the Debtor as defined in Bankruptcy Code § 101(5).

1.10 "**Claim Objection Deadline**" shall mean 30 days after the Effective Date of the Plan.

1.11 "**Closing**" means the day when the Debtor consummates and closes on the sale of the Hotel pursuant to the Confirmation Order or Sale Approval Order.

1.12 "**Confirmation**" means approval of the Plan by the Bankruptcy Court.

1.13 "**Confirmation Order**" means the order of the Bankruptcy Court approving the Plan pursuant to Bankruptcy Code § 1129.

1.14 "**Creditor**" means the holder of a Claim against the Debtor.

1.15 "**Disputed Claim**" means (a) any Claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed; and (b) any Claim or portion thereof, that has not been disallowed and with respect to which an objection or action concerning the allowance and/or extent thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection or action has not been resolved by a Final Order.

1.16 "**Disbursing Agent**" means Goldberg Weprin Finkel Goldstein LLP.

1.17 "**Disputed Claim Reserve**" means the escrow established by the Debtor at the Closing with the Disbursing Agent for the deposit of cash reserves to secure payment of disputed Claims in whole or in part.

1.18 "**Effective Date**" means the Closing date for the sale of the Hotel.

1.19 "**Equity Interests**" means the Debtor's membership interests held by 9 Crosby Mezz LLC.

1.20 "**Estate**" means the estate of the Debtor created under Bankruptcy Code section 541.

1.21 "**Exculpated Parties**" means collectively, and in each case as an "Exculpated Party", solely in their capacities as such: (a) the Debtor; (b) the Senior Lender and its representatives and advisors; (c) the holders of Series 19 debentures and their representatives and advisors; (d) the Stalking Horse Buyer, (e) any current director, manager or officer of the Debtor; (f) any advisors retained by the Debtor in connection with the Chapter 11 Case; and (g) with respect to each of the foregoing

3

Persons in clauses (a) through (f), only such Entity or Person's representatives and advisors, in each case in their capacity as such, who served as estate fiduciaries in the Chapter 11 Case.

1.22     **"Final Order"** means fourteen (14) days after entry of an order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified.

1.23     **"Hotel Transfer Instruments"** means the listed conveyancing documents and instruments as required by and designated under the Stalking Horse Contract to transfer title to the Hotel.

1.24     **"Petition Date"** means November 17, 2025, the date on which the voluntary petition commencing this Chapter 11 case was filed.

1.25     **"Priority Tax Claim"** means any Claim of a governmental unit for accrued and unpaid pre-petition sales tax, use tax, hotel occupancy tax and real estate tax and related charges.

1.26     **"Professional"** means all professionals employed by the Debtor under sections 327 and 328 of the Bankruptcy Code.

1.27     **"Professional Fee Claim"** means a Claim for compensation for services rendered, and reimbursement of expenses incurred by Professionals as awarded by the Bankruptcy Court.

1.28     **"Senior Lender"** means Mishmeret Trust Company Limited in its capacity as Trustee ("Mishmeret") under that certain Debenture (Series 19) Deed of Trust, dated as of August 10, 2022, and related real property mortgage, assignment of leases and rents, and general security interest as duly filed and perfected (collectively, the "Hotel Mortgage").

1.29     **"Series 18 Bondholders"** means holders of Debenture (Series 18) under that certain Deed of Trust, dated as of March 22, 2017.

1.30     **"Transfer Taxes"** means, without limitation, (a) New York City (RPT) and New York State real property transfer tax, and (b) other stamp taxes or similar taxes, all of which are exempt pursuant to § 1146(a) of the Bankruptcy Code, based upon a transfer of the Hotel made in accordance with, and pursuant to or in furtherance of the Plan.

1.31     **"Unsecured Claim"** means an allowed general unsecured claim arising prior to the Petition Date not entitled to priority under the Bankruptcy Code or otherwise secured by property of the Debtor.

1.32     **"U.S. Trustee Fees"** means fees payable pursuant to 28 U.S.C. § 1930, together with any statutory interest.

4

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTEREST

The Claims and Interests as defined by the Plan hereunder are classified as follows:

**Class 1** – Allowed Secured Claim of the Senior Lender.

**Class 2** – Allowed unsecured claims for trade creditors, service providers, vendors, any rejection damage claims arising out of the rejection of executory contracts that are not otherwise assumed and assigned as part of the sale and claims stemming from pending litigation not otherwise covered by insurance.

**Class 3** – Unliquidated Claims of personal injury and tort claimants covered by insurance.

**Class 4** – The Equity Interests of the Debtor and Reorganized Debtor.

## ARTICLE III

## UNCLASSIFIED CLAIMS

Pursuant to Section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Expense Claims, Priority Tax Claims or U.S. Trustee Fees, all of which shall be paid in full as required by 11 U.S.C. §1129(a)(9).

3.1  **Administrative Expense Claims**.  The Debtor has obtained use of cash collateral to pay the Hotel's post-petition bills and expenses in the ordinary course of business pursuant to Order, dated December 1, 2025 [ECF No. 20].  The Hotel's unpaid post-petition bills and expenses not otherwise paid in the ordinary course of business by the Hotel prior to the Effective Date (other than Professional Fees which are dealt with in Section 3.2 below) shall be deemed Administrative Expense Claims and paid in full on the Effective Date.

3.2  **Professional Fees**.

(a)      All Professionals seeking an award by the Bankruptcy Court for compensation shall file and serve their respective applications for allowance in accordance with the Bankruptcy Rules on or before the date that is twenty (20) days after the Effective Date.

(b)     Allowed Professional Fee Claims shall be paid in full in such amounts that are awarded by the Bankruptcy Court after entry of an appropriate Order or as soon as reasonably practicable thereafter.

(c)     Within a reasonable time after the Effective Date of no more than five (5) business days, holders of Professional Fee Claims shall provide an estimate of unpaid Professional Fee Claims incurred in rendering services prior to the Effective Date.  In turn, the Debtor shall reserve such estimated amounts for the benefit of the holders of the Professional Fee Claims until their fee applications are approved by Order of the Bankruptcy Court.

(d)     The Debtor is authorized to pay compensation for professional services rendered that are incurred after the Effective Date in the ordinary course, without the need for Bankruptcy Court approval.

3.3     **Priority Tax Claims**.  All accrued and outstanding hotel use taxes, sales taxes and real estate taxes that may be due as of the Effective Date (as prorated under the Stalking Horse Contract) shall be treated as Priority Tax Claims for the purposes of the Plan.  All Allowed Priority Tax Claims shall be paid in full from Available Cash on the Effective Date.

3.4     **U.S. Trustee Fees**.  The Debtor shall pay all outstanding U.S. Trustee Fees, together with any interest thereon, until the Chapter 11 case is closed.

## ARTICLE IV

## CLASSIFICATION AND TREATMENT OF CLAIMS

The Plan classifies Claims and Interests against the Debtor consistent with the applicable provisions of the Bankruptcy Code.

4.1    **Summary**.  The categories listed below classify Claims and Interests against the Debtor for all purposes, including voting, confirmation and distribution pursuant to Sections 1122 and 1123(a)(l) of the Bankruptcy Code, as summarized below:

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| Class 1 | Lender's Secured Claim | No | No |
| Class 2 | Unsecured Claims | TBD | TBD |
| Class 3 | Unliquidated Litigation Claims | Yes | Yes |
| Class 4 | Equity Interests | Yes | No |

## Class 1: The Allowed Secured Claims of the Senior Lender

4.1    **Classification** – Class 1 consists of the Allowed pre-petition Secured Claim of the Senior Lender arising under the Hotel Mortgage, as more fully delineated and acknowledged in the Cash Collateral Order in the sum of at least $105,844,626.00, including all principal and accrued pre-petition interest and fees.

4.2    **Treatment** – On the Effective Date, the Senior Lender shall be paid from Available Cash, the full amount of its Allowed Secured Claim ,which shall include, to the extent applicable and enforceable under the Senior Lender's loan documents and governing non-bankruptcy law, all post-petition interest at the contract default rate, together with all fees, costs, expenses, protective advances, late charges, and other charges recoverable under 11 U.S.C. § 506(b). Nothing in the Plan or the Confirmation Order shall cap, recharacterize, or disallow any component of the Senior Lender's § 506(b) entitlements.  In consideration for full payment of its Allowed Secured Claim, the Senior Lender shall execute and deliver an assignment or satisfaction of the Hotel Mortgage at

7

Closing as may be requested by the Stalking Horse Buyer or such other successful bidder that may emerge following the auction.

4.3    **Voting** – The Senior Lender is unimpaired under the Plan and is deemed to have accepted the Plan.

**Class 2: Unsecured Claims**

4.4    **Classification** – Except for unliquidated personal injury litigation Claims subject to insurance, the Debtor is classifying all other Claims as being Unsecured Claims, including Claims of the Debtor's affiliates for intercompany loans, Claims arising out of rejection of any executory contracts, the purported claim (the "Mold Claim") of Eliott and Shirley Encarnacion stemming from alleged mold conditions at the Hotel (subject to potential estimation under 11 U.S.C. § 502(c)) and the Claims of mechanic lienors, which may be disputed in whole or in part.

4.5    **Treatment** – Following final reconciliation and potential objections, the Allowed Class 2 Unsecured Claims shall be paid in full (or a *pro rata* portion thereof depending on final balances and the universe of Allowed Claims) as soon as practicable following the Effective Date of the Plan but in any case no later than forty five (45) days after the Effective Date of the Plan from Available Cash, together with post-petition interest at the federal judgment rate to the extent there are sufficient net proceeds available to pay Allowed Class 2 Unsecured Claims in full.

4.6    **Voting** – The holders of Class 2 Unsecured Claims are potentially impaired (pending final reconciliation and computation of all allowed amounts) and therefore eligible to vote on the Plan.

**Class 3: Unliquidated Litigation Claims**

4.7     **Classification** – The Debtor is classifying all pending personal injury and tort claims covered by insurance in a separate class due to their unliquidated status and availability of insurance proceeds to satisfy the same.

4.8     **Treatment** – For purposes of the Plan, the automatic stay related to all Class 3 Claims shall be deemed vacated as of the Effective Date, whereupon all pending state court litigation shall resume, with any recovery to be paid from available insurance proceeds, with any additional distributions from Available Cash, subject to the Debtor's rights to seek the estimation of such Claims under Section 502(c) of the Bankruptcy Code and/or the establishment of a Disputed Claims Reserve.

4.9     **Voting** – The holders of Class 3 unliquidated personal injury and tort claims are deemed impaired and eligible to vote on the Plan.

**Class 4: Equity Interests**

4.10    **Classification** – Class 4 consists of the equity interests in the Debtor.

4.11    **Treatment** – The holders of Class 4 equity interests against the Debtor shall receive any surplus that becomes available from Available Cash for the benefit of the Series 18 Bondholders after all Secured Claims, Administrative Expense Claims, Priority Tax Claims and Unsecured Claims have been paid in full, with applicable interest.

4.12    **Voting** –Class 4 equity interests are impaired under the Plan, although, as insiders, the holder of Class 4 equity interests is not entitled to vote on the Plan.

## MEANS FOR IMPLEMENTATION OF THE PLAN

4.13    **Sale of the Hotel Free and Clear of All Claims, Liens, Taxes, Interests and Non-Permitted Encumbrances.** The Plan shall be implemented and funded through the sale of

the Hotel pursuant to the Stalking Horse Contract or such other higher and better offer that may emerge at the auction. The results of the auction of the Hotel shall be confirmed by the Bankruptcy Court at the Sale Approval Hearing to be conducted on January 7, 2026. The Closing shall occur after confirmation and in furtherance of the Plan and Confirmation Order.

    4.14   **Other Provisions Relating to the Sale.**

        (a)    **Sale Approval Order**. Approval of the Sale to the Stalking Horse Buyer or such other successful purchaser that may emerge shall be subject to separate Order of the Bankruptcy Court under 11 U.S.C. §§ 363(b), (f) and 365.

        (b)    **Transfer of Hotel**. Upon closing of the sale, title to the Hotel shall be transferred and conveyed to the Stalking Horse Buyer or such other successful purchaser as may emerge as of the Effective Date. The Confirmation Order shall contain appropriate provisions authorizing and directing the Debtor to execute or deliver, or to join in the execution or delivery, of the Hotel Transfer Instruments and to perform any act that is necessary for the consummation of the Plan.

        (c)    **Sources and Uses of Available Cash**. The projected collection and distribution of Available Cash by the Debtor in summary form is set forth below:

| Source | Amount |
|---|---|
| Projected Bank Deposits | $1,000,000.00 |
| Projected Net Sale Proceeds, less brokerage fees and customary Closing costs | $123,800,000.00 |
| **Total Available Cash** | **$124,800,000.00** |

| Creditor Class | Proposed Distribution |
|---|---|
| Administrative Expense Claims & U.S. Trustee Fees | $500,000.00 (projected) |
| Unclassified Priority Tax Claims | $1,118,500 (projected) |
| Class 1 – Senior Lender's Secured Claim | $105,844,626.00, plus all post-petition interest at the contract default rate, together with all fees, costs, expenses, protective advances, late charges, currency adjustments, and other charges recoverable |

| | under 11 U.S.C. § 506(b). |
|---|---|
| Class 2 – Unsecured Claims | $11.7 million, plus a reserve for the Mold Claim. |
| Class 3 – Unliquidated Personal Injury/Tort Claims | Not applicable. |
| Class 4 – Equity Interests | Potential surplus for the benefit of Series 18 Bondholders. |

For the avoidance of doubt, until the Senior Lender receives indefeasible payment in full in cash of its Allowed Class 1 Secured Claim, all of the Senior Lender's liens, claims, mortgages, security interests and other encumbrances shall continue in full force and effect on all Collateral and shall attach to all proceeds of the Sale and any other dispositions with the same validity, priority, and extent as existed pre-petition and pre-sale. No distribution or payment on account of any junior Claim or Interest shall be made from proceeds subject to the Senior Lender's liens absent (i) the Senior Lender's written consent; or (ii) a specific statutory entitlement that is applicable and ordered by the Court.

4.15    **Transfer Taxes**.    The sale of the Hotel constitutes the making or delivery of instruments of transfer of property or otherwise, pursuant to or in connection with confirmation of the Plan, and, therefore, to the maximum extent provided by Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan, including an issuance of any Hotel Transfer Instruments, including the Bargain and Sale and Deed executed by the Debtor, shall not be subject under any law imposing a stamp tax, deed or other transfer tax (RPT and TP-584) (previously defined as, the "Transfer Taxes").    Accordingly, the appropriate officials or agents of state or local governmental unit, including New York State and the City Register for the County of New York, shall forego collection of any such Transfer Taxes and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such Transfer Taxes.

11

4.16    **Preservation of Causes of Action.**  All Avoidance Claims and other Claims and causes of action belonging to the Debtor's Estate relating to any prior transactions shall be preserved for the benefit of the Debtor's Estate, with any recovery therefrom to be distributed in accordance with the terms of this Plan. No release, exculpation, injunction, or similar provision in the Plan or the Confirmation Order shall release, enjoin, limit, or impair: (i) the Senior Lender's rights against the Debtor under the Senior Lender's loan documents; or (ii) the enforcement of the Senior Lender's liens and claims, in each case until indefeasible payment in full. For the avoidance of doubt, the Plan's preservation of Estate Causes of Action shall not include any avoidance, subordination, recharacterization, or lender-liability claim against the Senior Lender or its Collateral.

## ARTICLE V

## DISTRIBUTIONS

5.1    **Method of Payment**.  Unless otherwise expressly agreed, in writing, payments to be made pursuant to the Plan shall be made at the times and in the amounts set forth in the Plan by either electronic funds wire transfer or check drawn on a domestic bank.

5.2    **Disbursing Agent**. All distributions and/or payments under this Plan shall be made by the Debtor at Closing or by the Disbursing Agent as directed by the Debtor's Manager who shall not be required to give any bond or surety or other security for the performance of its duties hereunder.  All Cash received by the Disbursing Agent shall be kept in a segregated escrow account maintained at a banking institution that is an authorized depository in the Southern District of New York.  The Disbursing Agent shall be compensated for services rendered under the Plan (including any legal matters relating to the Closing and objections to claims).  The Disbursing Agent shall not incur any liability, other than for gross negligence, willful misconduct, criminal conduct, or

for any claim for liability pursuant to 28 U.S.C. § 959 in connection with carrying out its duties under the Plan, which liability shall be expressly limited to the period commencing from the Disbursing Agent's receipt of the Available Cash and ending on the date that all disbursements contemplated by the Plan have been distributed. The Disbursing Agent shall **not** be deemed to be an officer, fiduciary or agent of the Debtor. The Disbursing Agent shall have no obligation to file income tax returns or similar reports with the applicable taxing authorities, which obligations shall remain with the Debtor.

5.3    **Rights and Powers of Disbursing Agent**. The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan, (ii) to object to claims as directed by the Debtor's Manager and make all Distributions contemplated hereby, and (iii) exercise such other powers as may be vested in the Disbursing Agent pursuant to this Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

5.4    **Disputed Claims Reserve**.  No distributions shall be made with respect to any Disputed Class 2 Unsecured Claim.  Pending the determination of any objections to Disputed Claims, the Debtor shall deposit into a separate reserve (the "Disputed Claims Reserve") funds equal up to the projected full amount of the Disputed Claims asserted (or such lesser amount as the Court may determine through an estimation proceeding under section 502(c) of the Bankruptcy Code.  No Disputed Claims Reserve for Class 2 or any other junior class shall be funded from proceeds subject to the Senior Lender's lien unless and until the Senior Lender has received indefeasible payment in full in cash on account of its Allowed Class 1 Secured Claim, including all § 506(b) components. For the avoidance of doubt, no Disputed Claims Reserve shall delay or impair the Senior Lender's payoff.

5.5 **Prosecution of Objections**.  The Debtor shall have the right to file, settle, compromise, withdraw or litigate, to final order or judgment, objections to Disputed Claims. Objections to Claims, other than Administrative Expense Claims, shall be served and filed on or before the Claims Objection Deadline.

5.6 **Distribution After Allowance**.  Disputed Unsecured Claims that become Allowed Class 2 Unsecured Claims shall be paid the allowed amounts from the Disputed Claims Reserve within ten (10) days after entry of a Final Order allowing such Disputed Claims.

5.7 **Delivery of Distributions**.  Distributions to holder of Allowed Claims shall be made: (i) at the address set forth on the respective Proof(s) of Claim or other request(s) for payment filed by the holder of such Allowed Claim; (ii) at the addresses set forth in any written notices of address change delivered to the Debtor; or (iii) at the address reflected in the Schedules if no Proof of Claim is filed and the Debtor has not received a written notice of change of address.  If the distribution to the holder of any Claim is returned to the Disbursing Agent as undeliverable, the Disbursing Agent will make reasonable attempts to locate the holder of the Allowed Claim.  Any further undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution (each, an "Unclaimed Distribution").  A distribution becomes an Unclaimed Distribution if three months have elapsed since a distribution is returned to the Disbursing Agent as undeliverable or three months have elapsed since a distribution check has gone uncashed and if no notice has been provided to the Disbursing Agent by the holder of the claim to which such distribution relates containing a valid address for such holder.

5.8 **Continuation of Manager**.  Daniel Sasson shall continue to act as the Manager for the Debtor and Reorganized Debtor with respect to all post-confirmation matters and activities,

14

subject to rights of the member to replace or substitute Mr. Sasson as the Manager in accordance with the Debtor's underlying operating agreement or order of the Israeli court.

<h3 align="center">ARTICLE VI</h3>

<h3 align="center">EXECUTORY CONTRACTS</h3>

**Treatment of Executory Contracts.** The Sale Procedures Order contains detailed notice and cure provisions relating to the assumption and assignment of designated executory contracts. All allowed cure amounts for the assumption and assignment of executory contracts shall be paid on the Effective Date of the Plan. All other executory contracts not designated for assumption and assignment shall be deemed rejected for purposes of the Plan pursuant to separate notice (the "Rejection Notice") to be given by the Debtor on or before the Effective Date. After issuance of the Rejection Notice, the counterparties to any rejected executory contract must file a Claim for rejection damages with the Bankruptcy Court within 30 days of the Effective Date, failing which, such counterparty shall be barred from asserting a Claim against the Debtor for rejection damages or receiving a distribution from Available Cash.

<h3 align="center">ARTICLE VII</h3>

<h3 align="center">CONFIRMATION AND CONSUMMATION OF THE PLAN</h3>

7.1    **Injunction against Interference with the Plan.**    The entry of the Confirmation Order shall forever stay, restrain and permanently enjoin on and after the Effective Date: (a) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from any property of the Debtor's Estate, including the Hotel sold under this Plan; or (b) the creation, perfection or enforcement of any lien or encumbrance against the Hotel or other property of the Debtor's Estate. Since this Plan provides for the liquidation of the property of the Debtor's Estate, the confirmation of the Plan will not result in a discharge of

<div align="center">15</div>

the Debtor.  Upon entry of the Confirmation Order, all holders of Claims against or interests in the Debtor and other parties in interest, and any other Person with notice (actual or constructive) of the Confirmation Order shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan or the sale of the Hotel.  For the avoidance of doubt, nothing in the Plan or the Confirmation Order shall (i) impair the Senior Lender's rights and remedies if the Plan does not become effective; (ii) limit the Senior Lender's rights to object to any surcharge, carve-out expansion, or payment proposed to be made from Collateral or proceeds; or (iii) release, enjoin, or otherwise affect the Senior Lender's rights under its loan documents, the Cash Collateral Order, or applicable law, except to the extent expressly satisfied by indefeasible payment in full.

7.2    **Conditions to Effective Date.**   The Plan will not become effective, and the Effective Date will not occur, unless and until:

(a)    The Confirmation Order has been entered and becomes a Final Order;

(b)    The Bankruptcy Court shall have approved the Sale of the Hotel through the Sale Approval Order and the Confirmation Order; and

(c)    The sale of the Hotel has closed.

7.3    **Execution of Documents.**  The Debtor shall be authorized to execute, release and deliver all Hotel Transfer Instruments and other documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of this Plan, including the deliverables under the Stalking Horse Contract.

7.4    **Limitation as to Liability**. Neither the Debtor nor its attorneys, officers, members and managers shall have or incur any liability to any person or entity for any action taken or omitted to be taken in connection with or related to the sale of the Hotel or formulation, preparation, prosecution, dissemination, confirmation, consummation or administration of this Plan, the

16

Disclosure Statement or any contract, instrument or other agreement or document created or entered into, or the distribution of property under this Plan, except for willful misconduct or gross negligence, breach of fiduciary duty, criminal conduct, ultra vires actions or the disclosure of confidential information that causes actual damages.  In addition, any release exculpation or limitation of liability provided for in this Plan shall not release any attorney from any obligations owed under Rule 1.8(h) of the New York Rules of Professional Conduct for malpractice liability. Nothing in the Plan nor the Confirmation Order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority against (i) the Debtor, or (ii) any of the Debtor's attorneys, officers, members and managers.  In addition, subject to Sections 524 and 1141 of the Bankruptcy Code, the releases, exculpations, and limitations of liability described herein shall not preclude police, federal tax, or regulatory agencies from fulfilling their statutory duties.

7.5    **Exculpation.**  To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any conduct occurring on or after the Petition Date and up to and including the Effective Date in connection with or arising out of the filing and administration of the Chapter 11 Case, the Sale process, the closing of the Sale; the Disclosure Statement, including the formulation, negotiation, preparation, dissemination, implementation, administration, confirmation, and consummation thereof, the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; or the transactions in furtherance of any of the foregoing; or upon any other related act or omission, transaction, agreement, event, or other

occurrence taking place from the Petition Date through and including the Effective Date; except for acts or omissions of an Exculpated Party that constitute gross negligence, fraud, or willful misconduct, in each case as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

7.6   **Binding Effect.**   Subject to the occurrence of the Effective Date, the provisions of the Plan will bind every holder of a claim against or Interest in the Debtor and inure to the benefit of and be binding on such holder's respective heirs, successors and assigns, regardless of whether the Claim or Interest of such holder is impaired under the Plan and whether such holder accepted the Plan.

## ARTICLE VIII

## RETENTION OF JURISDICTION

8.1   **Retention of Jurisdiction**.   The Bankruptcy Court shall retain post-confirmation jurisdiction over the following matters:

8.1.1   To allow or disallow in whole or in part any objections filed prior to the Claim Objection Deadline.

8.1.2   To grant or deny the applications for allowance of final compensation and reimbursement of expenses of Professionals.

8.1.3   To enter an order or final decree following the sale of the Hotel, payment of allowed claims and resolution of all Claims.

8.1.4   To allow, disallow, determine, liquidate, classify, estimate, or establish the treatment of any Claim.

8.1.5   To decide any dispute relating to the sale of the Hotel prior to a closing thereon;

8.1.6   To adjudicate any motions, adversary proceedings, applications or contested matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

8.1.7   To resolve any issues related to any matters adjudicated in the Chapter 11 Case;

8.1.8   To hear and determine matters concerning state, local and federal taxes in accordance with sections 346 and 1146 of the Bankruptcy Code;

8.1.9   To enter and implement such orders or take such other actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked, or vacated;

8.1.10  To resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any release or exculpation adopted in connection with this Plan; and

8.1.11  To enter and implement such Order(s) as may be necessary or appropriate to execute, implement, enforce or consummate the provisions of the Plan, and the distributions hereunder.

## ARTICLE IX

## GENERAL PROVISIONS

9.1   **Headings.**  The headings in the Plan are for reference purposes only.

19

9.2     **Contents of Confirmation Order**.  The Confirmation Order shall be in form and substance satisfactory to the Debtor, the Senior Lender, and the Stalking Horse Buyer and otherwise conform to the Local Bankruptcy Rules.

9.3     **Orders in Aid of Consummation**.   Pursuant to §§ 105, 1141, 1142, and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation and/or consummation of the Plan directing the implementation of matters or actions required by the Plan.

9.4     **Compliance with Tax Requirements**.  In connection with the Plan, the Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and distributions under the Plan shall be subject to applicable withholding and reporting requirements; *provided, however*, that the transfer of the Hotel or other interest shall not be subject to any state or local Transfer Taxes pursuant to § 1146 of the Bankruptcy Code.

9.5     **Due Authorization by Creditors**.  Each and every Creditor who elects to participate in the distributions provided for under the Plan warrants that it is a lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding liens, encumbrances, commitments, agreements or understandings, express or implied, that may or can in any way defeat or modify the rights released, or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

9.6     **Amendments and Modifications**.  The Plan may be altered, amended, or modified by the Debtor, consistent with the Sale Procedures Order, at any time before the substantial consummation of the Plan, as provided in §§ 1101 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. For the avoidance of doubt, no modification of the Plan, the Sale Procedures Order, or the Sale Approval Order that adversely affects the Senior Lender's treatment,

20

lien priority, § 506(b) entitlements, or payment waterfall shall be approved without the Senior Lender's prior written consent or further order of the Court after notice and a hearing.

       9.7    **Nonconsensual Confirmation.**  As set forth above, in the event any impaired class of claims does not accept a plan, a bankruptcy court may nevertheless confirm such plan at the proponent's request if at least one impaired class has accepted the plan (with such acceptance being determined without including the acceptance of any "insider" in such class) and, as to each impaired class which has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to non-accepting impaired classes.  In the event that any impaired class of Claims fails to accept the Plan in accordance with section 1129(a)(8) of the Bankruptcy Code, the Debtor reserves the right to seek nonconsensual confirmation of the Plan in accordance with section 1129(b) of the Bankruptcy Code.

       9.8    **Filing of Additional Documents.**  Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the sale of the Hotel or the terms and conditions of the Plan.

       9.9    **Computation of Time.**  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

       9.10    **Successors and Assigns.**  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

       9.11    **Quarterly Fees.**  All fees payable pursuant to 28 U.S.C. § 1930, together with any applicable interest thereon, shall be paid by the Debtor until the closing of the Bankruptcy Case under 11 U.S.C. §350(a).

9.12    **Post-Confirmation Reports.**    The Debtor shall file quarterly status reports until the Chapter 11 Case is closed.

Dated: New York, NY
          December 8, 2025

<div style="margin-left:50%">

Goldberg Weprin Finkel Goldstein LLP
*Proposed Counsel for the Debtor and
Debtor-in-Possession*
125 Park Avenue, 12th Floor
New York, New York 10017
(212) 221-5700
knash@gwfglaw.com


By:      */s/ Kevin J. Nash, Esq.*
          Kevin J. Nash, Esq.

9 Crosby LLC


By:      */s/ Daniel Sasson*
          Daniel Sasson, Manager

</div>