| | |
|---|---|
| Mark F. Mgnozzi, Esq.<br>**THE MAGNOZZILAW FIRM, P.C.**<br>23 Green Street, Suite 302<br>Huntington, New York 11743<br>Telephone: (631) 923-2858<br>Email: mmagnozzi@magnozzilaw.com | Hearing Date: January 7, 2026<br>Hearing Time: 10:00 AM<br>Cure Objection Deadline:<br>December 17, 2025<br>Sale Objection Deadline:<br>December 31, 2025, at 5 PM |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

In re:

**9 CROSBY LLC,**

                                 Debtor.

**Chapter 11**

**Case No. 25-12559-LGB**

Docket Nos. 2, 18 & 22

-----------------------------------------------------------------x

**ORACLE'S LIMITED OBJECTION TO AND RESERVATION OF RIGHTS**
**REGARDING DEBTOR'S SALE MOTION AND DEBTOR'S NOTICE OF PROPOSED**
**(I) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS**
**AND (II) CURE AMOUNTS**

Oracle America, Inc., successor in interest to MICROS Systems, and Nor1 ("Oracle"), a creditor and contract counter-party in the above-captioned Chapter 11 case, submits this limited objection to and reservation of rights ("Rights Reservation") regarding both: (1) *Debtor's Motion Seeking Entry of an Order (I) Approving Bid Procedures Relating to the Public Auction Sale of the Debtor's Hotel at 150 Lafayette Street a/k/a 9 Crosby Street Free and Clear of All Claims, Liens and Interests; (II) Approving a Proposed Stalking Horse Contract with Dan Hotels Ltd. and Related Break-Up Fee and Reimbursement of Expenses; and (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts Relating to the Operation of the Hotel* [Dkt. No. 2] ("Sale Motion"); and (2) *Notice of Proposed (I) Assumption and Assignment of Executory Contracts and (II) Cure Amounts* ("Assumption Notice"), filed by 9 Crosby LLC ("Debtor").

I. **INTRODUCTION**

1. In connection with the Sale Motion, the Debtor seeks Bankruptcy Court authority to, among other things, assume and assign an executory contract between the Debtor and Oracle. Oracle objects to, and reserves its rights regarding, the proposed assumption and assignment for several reasons.

2. First, the targeted Oracle agreement is, or pertains to, one or more licenses of intellectual property which are not assignable absent Oracle's consent pursuant to both the underlying license agreement and applicable law.

3. Second, the Assumption Notice does not provide a complete description of the contract identified and lacks relevant information, precluding identification of the targeted agreement. Therefore, Oracle is unable to determine either which contract may be assumed and assigned or the accuracy of the proposed cure amount.

4. Third, Oracle is in the process of reviewing the adequate assurance information for DH 9 Crosby LLC, an affiliate of Dan Hotels ("Stalking Horse Bidder"). However, the Stalking Horse Bidder may not be the ultimate purchaser/assignee. Therefore, Oracle is unable to determine whether the successful bidder will be capable of performing under the terms of the contract which the Debtor seeks to assume and assign. Until the ultimate purchaser is known, Oracle reserves its rights on this point.

5. Accordingly, Oracle requests that the Court deny the Debtor's request for authority to assume and assign any Oracle agreement without Oracle's consent.

II. **FACTUAL BACKGROUND**

6. The Debtor filed the above captioned case on November 17, 2025 ("Petition Date"). The Debtor continues to operate as a debtor in possession.

7. On the Petition Date, the Debtor filed the Sale Motion, which seeks Court authority to sell substantially all assets related to the NoMo SoHo Hotel. Attached as Exhibit C to the Sale Motion is an Asset Purchase Agreement between the Debtor and the Stalking Horse ("APA"). Although the APA does not appear to contemplate any transitional or shared use, Oracle reserves all rights regarding any subsequent asset purchase agreement which may include transitional use or services.

8. On December 5, 2025, the Debtor filed the Assumption Notice. Attached as Exhibit B to the Assumption Notice is the list of contracts which may be assumed and assigned. This Assumption Notice identifies one Oracle agreement described only as a "PMS/POS" agreement ("Oracle Agreement"). The stated cure for the Oracle Agreement is $33,716.34.

## III. ARGUMENT

### A. Debtor May Not Assume And Assign Any Oracle Agreement Absent Oracle's Consent Because The Oracle Agreement May Pertain To One Or More Licenses Of Intellectual Property.

9. Section 365(c) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

10. Federal law makes non-exclusive copyright licenses non-assignable absent consent of the licensor. See In re Catapult Entertainment, Inc., 165 F.3d 747 (9th Cir. 1999), cert. dismissed, 528 U.S. 924 (1999) (patent law renders non-exclusive patent licenses personal and non-assignable under Bankruptcy Code § 365(c)(1)); In re Sunterra Corp., 361 F.3d 257, 271 (4th Cir. 2004) (holding that a debtor was statutorily barred by § 365(c)(1) from assuming a computer software license where contract counterparty did not consent to the assumption); In re: West Elec.,

3

Inc.) 852 F. 2d 79 (3d Cir. 1988) (holding that the "provision limiting assumption of contracts is applicable to any contract subject to a legal prohibition against assignment."). See, In re Patient Educ. Media 210 B.R. 237, 243 (Bankr. S.D.N.Y 1997); See, In re Adelphia Communications Corp, et al., 359 B.R. 65 (Bankr. S.D.N.Y. 2007).

11. Oracle's agreements are, or pertain to, non-exclusive licenses of copyrighted software. Therefore, pursuant to Bankruptcy Code section 365, the Debtor may not assume and assign any Oracle agreement without Oracle's consent. For the reasons discussed herein, Oracle does not consent to the Debtor's proposed assumption and assignment of the Oracle Agreement at this time.

**B.    The Debtor Has Not Adequately Identified The Oracle Agreement To Be Assumed and Assigned.**

12. The Assumption Notice does not provide sufficient information for Oracle to determine which contract is at issue. Oracle currently has several active agreements. Without more specific information, Oracle cannot determine whether it is evaluating the same agreement the Debtor seeks to assume and assign. In addition, the Assumption Notice does not identify any governing agreement or support renewal. Because the support agreement and master agreement relate to the underlying license agreement as part of substantially the same transaction, they constitute integrated contracts which may not be separately assumed and assigned – if that is the Debtor's intent. *See, e.g., In re Interstate Bakeries Corporation*, 751 F.3d 955, 961-2 (8th Cir. 2014); *In re Buffets Holdings*, 387 B.R. 115 (Bankr. D. Del. 2008).

13. An executory contract must be assumed in its entirety and "[c]orrespondingly, all of the contracts that comprise an integrated agreement must either be assumed or rejected, since they all make up one contract." *In re Taylor-Wharton Int'l LLC*, 2010 WL 4862723, at *3 (Bankr. D. Del. Nov. 23, 2010) (citing *In re Exide Tech.*, 340 B.R. 222, 228 (Bankr. D. Del. 2006)). Under

California law,[1] made applicable by the Oracle Agreement, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642. Because the support agreements and master agreements relate to the underlying license agreements as part of substantially the same transaction, they constitute integrated contracts which may not be separately assumed and assigned.

14. In order to clarify which Oracle contract Debtor hopes to assume and assign, Oracle requests that the Debtor specify the targeted contract's (1) identification or contract number; (2) date; (3) associated support renewal; and (4) governing license agreement. This information will enable Oracle to evaluate whether the Oracle Agreement is assignable, supported, expired, or in default, and, if in payment default, the appropriate cure amount. Additionally, the information will allow Oracle to assess whether Oracle may accept performance from an entity other than the Debtor. Oracle reserves its right to be heard on this issue until after the Oracle Agreement the Debtor seeks to assume and assign is identified with greater specificity.

### C. The Debtors Has Not Provided The Correct Cure Amount.

15. Before assuming and assigning any executory contract, the Debtor must cure (or provide adequate assurance of a prompt cure of) any default under the subject contracts. 11 U.S.C. § 365(b)(1). The Debtor has identified a cure amount of $33,716.34 for the Oracle Agreement. Without a complete description of the Oracle Agreement, Oracle is unable to ascertain whether the Debtor's cure amount is accurate. Oracle reserves its right to be heard further regarding the cure amount until after the contract the Debtor seeks to assume and assign is identified with enough specificity to allow Oracle to determine the correct cure.

---

[1] *In re Hawker Beechcraft, Inc.*, No. 12-11873 (SMB), 2013 WL 2663193, at *3 (Bankr. S.D.N.Y. June 13, 2013) ("State law governs the question whether an agreement is divisible or indivisible for the purposes of assumption and rejection under Bankruptcy Code § 365.")

5

### D. The Debtor Has Not Provided Adequate Assurance of Future Performance By the Potential Assignee.

16. Before assuming and assigning any executory contract, the Debtor must provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1). Oracle is in the process of reviewing the adequate assurance information for the Stalking Horse Bidder. However, the sale is subject to overbid[2].

17. To satisfy Bankruptcy Code section 365(b), Oracle requests that the Debtor provide the following information about the ultimate purchaser and/or the proposed assignee: (1) financial bona fides; (2) confirmation that the purchaser is not an Oracle competitor; and (3) confirmation that the ultimate assignee will (a) execute an Oracle Assignment Agreement and related documentation which identifies with specificity the Oracle executory contract(s) to be assigned; and, if appropriate (b) enter into an Oracle Master License Agreement. Absent these assurances, Oracle cannot determine the proposed assignee's creditworthiness, its suitability as an Oracle customer, or its ability to adequately perform under the terms of the Oracle Agreement. Until the information described above is provided, the Debtor has not complied with the requirements of section 365(b)(1)(C).

### E. Oracle's Agreement Does Not Authorize Simultaneous Use By the Debtor and the Purchaser.

18. Oracle reserves all rights to object to the final APA if someone other than the Stalking Horse Bidder emerges as the successful purchaser, including to the extent the APA or any accompanying Transition Services Agreement ("TSA") includes any broad provisions regarding transitional or shared use of the Oracle Agreement or any Oracle-licensed software. Simultaneous

---

[2] Oracle is aware that counterparties have until January 6, 2026 in which to file an objection to adequate assurance, if the successful bidder is someone other than the Stalking Horse. However, in order to save duplicate filings, Oracle incorporates its objection to adequate assurance in this Rights Reservation.

use of, and access to, Oracle's licensed software exceeds the scope of the permitted uses under the Oracle Agreement, and would potentially result in an unauthorized "splitting" of the licenses between the Debtor and the purchaser. Oracle objects to the extent that any transitional or shared use arrangement purports to grant to both the Debtor and purchaser(s) the right to shared use of the Oracle licenses beyond the license terms. Oracle reserves all rights regarding any transitional use, including under any TSA, until after Oracle has had an opportunity to review the final TSA proposed, and to assess how that TSA may impact Oracle, including whether the use contemplated thereunder constitutes non-compliance under the terms of the Oracle Agreement.

## IV. CONCLUSION

19. For the reasons set forth above, Oracle respectfully requests that the Court deny the Debtor's request for authority to assume and assign the Oracle Agreement, or any Oracle agreement. Oracle reserves its right to be heard further on all issues set forth herein.

Dated: December 17, 2025
Huntington, New York

**THE MAGNOZZI LAW FIRM P.C.**
By:       /s/ Mark F. Magnozzi
        Mark F. Magnozzi, Esq.
Benjamin Rachelson, Esq.
23 Green Street, Suite 302
Huntington, New York 11743
Telephone: (631) 923-2858
E mail: mmagnozzi@magnozzilaw.com

Shawn M. Christianson, Esq.
**BUCHALTER, A Professional Corporation**
425 Market Street, Suite 2900
San Francisco, California 94105-2491
Telephone: (415) 227-0900
Facsimile: (415) 227-0770
E-mail: schristianson@buchalter.com

**ORACLE AMERICA, INC.**
Peggy Bruggman, Esq.
Colin Farrell, Esq.
500 Oracle Parkway
Redwood City, California 94065
Telephone: (650) 506-5200
Facsimile: (650) 506-7114
**Attorneys for Oracle America, Inc.**

7

# CERTIFICATE OF SERVICE

I, Mark F. Magnozzi, hereby certify that on December 17, 2025, I served a copy of *ORACLE'S LIMITED OBJECTION TO AND RESERVATION OF RIGHTS REGARDING DEBTOR'S SALE MOTION AND DEBTOR'S NOTICE OF PROPOSED (I) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND (II) CURE AMOUNTS* on the parties listed on the below service list via email containing a pdf of the document.  In addition, the parties entitled to receive notice by the Court's CM-ECF system were sent an email notification of such filing by the Court's CM-ECF System.

/s/ Mark F. Magnozzi
Mark F. Magnozzi

**BY ECF**

| | |
|---|---|
| Kevin J. Nash, Esq.<br>Ravi Vohra, Esq.<br>Goldberg Weprin Finkel Goldstein LLP<br>*Proposed Counsel to the Debtor*<br>125 Park Avenue, 12th Floor<br>New York, NY 10017<br>knash@gwfglaw.com<br>rvohra@gwfglaw.com | United States Trustee<br>Office of the United States Trustee - NY<br>Alexander Hamilton Custom House<br>One Bowling Green, Room 534<br>New York, NY 10004-1408<br>USTPRegion02.NYECF@USDOJ.GOV |
| Michael Freidman, Esq.<br>Chapman and Cutler, LLP<br>*Counsel to Mishmeret (in its capacity as Trustee for Series 19 Bondholders)*<br>1270 Avenue of the Americas,<br>New York, NY 10020<br>friedman@chapman.com | Charles A. Dale, Esq.<br>Proskauer Rose, LLP<br>Counsel to Stalking Horse Buyer<br>One International Place,<br>Boston, MA 02110<br>cdale@proskauer.com |